**No. 25-3854**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

Frank Biederman, et al.,

*Plaintiffs-Appellants*

vs.

FCA US LLC, et al.,

*Defendants-Appellees.*

Appeal From the United States District Court
for the Northern District of California
The Honorable Jacqueline Scott Corley, Case No. 23-cv-06640-JSC

**PLAINTIFFS-APPELLANTS' REPLY BRIEF**

Elizabeth J. Cabraser
David Stellings
Kevin R. Budner
Phong-Chau G. Nguyen
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
kbudner@lchb.com

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
(212) 998-6580
Si13@nyu.edu

*Attorneys for Plaintiffs-Appellants*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1
ARGUMENT .......... 4
I. The *Illinois Brick* rule is based on *Illinois Brick*, not *Hanover Shoe* .......... 4
II. Nothing compels that RICO and antitrust law should move in tandem .......... 10
A. RICO and antitrust law address different harms. .......... 11
B. The Supreme Court has not imported antitrust limitations into RICO. .......... 14
C. The only direct-relation test for RICO is proximate cause .......... 16
D. There is no "judicial consensus" on RICO standing restrictions .......... 17
CONCLUSION .......... 18



3370148.5

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987) .......... 9, 10

*Ames v. Am. Tel. & Tel. Co.*,
166 F. 820 (C.C.D. Mass. 1909) .......... 10

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) .......... 17

*Apple Inc. v. Pepper*,
587 U.S. 273 (2019) .......... 2, 6, 12

*Boshes v. Gen. Motors Corp.*,
59 F.R.D. 589 (N.D. Ill. 1973) .......... 2, 7

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) .......... *passim*

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008) .......... 17

*Carnivale Bag Co. v. Slide-Rite Mfg. Corp.*,
395 F. Supp. 287 (S.D.N.Y. 1975) .......... 8

*Freedom from Religion Found., Inc. v. Chao*,
433 F.3d 989 (7th Cir. 2006) .......... 12

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
392 U.S. 481 (1968) .......... *passim*

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) .......... 17

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) .......... 3, 9, 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)....................1, 2, 8

*Illinois. v. Ampress Brick Co.*,
536 F.2d 1163 (7th Cir. 1976)....................*passim*

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)....................9, 10

*Kousisis v. United States*,
605 U.S. 114 (2025)....................5

*Loeb v. Eastern Kodak Co.*,
183 F. 704 (3d Cir. 1910)....................10

*In re Master Key Antitrust Litig.*,
1973 WL 855 (D. Conn. Aug. 23, 1973)....................2, 8

*Med. Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025)....................*passim*

*Mendoza v. Zirkle Fruit Co.*,
301 F.3d 1163 (9th Cir. 2002)....................6, 16

*In re Mid-Atl. Toyota Antitrust Litig.*,
516 F. Supp. 1287 (D. Md. 1981)....................12

*Morissette v. United States*,
342 U.S. 246 (1952)....................5

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
130 F.4th 91 (4th Cir. 2025)....................17

*Rotella v. Wood*,
528 U.S. 549 (2000)....................9, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*S. Pac. Co. v. Darnell-Taenzer Lumber Co.*,
245 U.S. 531 (1918)....................................................................6

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)....................................................................3, 14, 15

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)....................................................................12

*In re W. Liquid Asphalt Cases*,
487 F.2d 191 (9th Cir. 1973)....................................................................2, 7, 8

*Westmoreland Asbestos Co. v. Johns-Manville Corp.*,
30 F. Supp. 389 (S.D.N.Y. 1939)....................................................................10

*Yegiazaryan v. Smagin*,
599 U.S. 533 (2023)....................................................................12, 16, 17

**Statutes**

Clayton Act, 15 U.S.C. § 15....................................................................*passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §
1964(c) ....................................................................*passim*

**Other Authorities**

Daniel A. Crane, *Antitrust Antitextualism*, 96 Notre Dame L. Rev.
1205 (2021) ....................................................................11

Daniel Berger & Roger Bernstein, *An Analytical Framework for Antitrust Standing*, 86 Yale L.J. 809 (1977) ....................................................................10

Lawrences B. Solum, *Original Public Meaning*, 2023 Mich St. L.
Rev. 807 (2024) ....................................................................1

Note, *Antitrust Federalism, Preemption, and Judge-Made Law*, 133
Harv. L. Rev. 2557 (2020) ....................................................................2



3370148.5

## TABLE OF AUTHORITIES
## (continued)

**Page**

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (2025) .................................11, 12



3370148.5

## INTRODUCTION

Cummins' brief is premised on two arguments. Both are fatally flawed, and neither has any textual mooring in a statute available to "any person injured in his business or property by reason of" a RICO violation. 18 U.S.C. § 1964(c).

First, Cummins claims that Congress must have intended to incorporate into RICO a privity requirement later adopted by the Supreme Court in antitrust law. For this argument to work, Cummins must establish that a privity requirement was part of the original public meaning of the RICO statute, following the same textual approach for constitutional interpretation.[1]

But, when RICO was enacted in 1970, the antitrust privity rule was hardly the kind of well-settled and widely accepted "old soil" necessary for courts to assume Congress meant to adopt it. It would not even be announced until *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), seven years later. Cummins instead would have this Court believe that *Illinois Brick* was simply a replay of the pre-RICO decision in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, a case that precluded a pass-through *defense* but imposed no affirmative limitations on standing. 392 U.S. 481 (1968).

---

[1] *See* Lawrence B. Solum, *Original Public Meaning*, 2023 Mich St. L. Rev. 807 (2024).

This would come as a shock to most courts in the period between *Hanover Shoe* and *Illinois Brick*—including, critically, this one—which rejected the argument that *Hanover Shoe* mandated a privity requirement. *In re W. Liquid Asphalt Cases*, 487 F.2d 191, 199 (9th Cir. 1973). Indeed, before *Illinois Brick*, the dominant view was that an indirect purchaser rule would "be stretching *Hanover Shoe* beyond all recognition," *Boshes v. Gen. Motors Corp.*, 59 F.R.D. 589, 596 (N.D. Ill. 1973), and "turn [*Hanover Shoe*] . . . on its head," *In re Master Key Antitrust Litig.*, 1973 WL 855, at *2 (D. Conn. Aug. 23, 1973).

In *Illinois Brick* itself, the defendant conceded that "a conflict among the circuits" existed on whether *Hanover Shoe* mandated a privity requirement. Petition for Writ of Certiorari at 8, *Illinois Brick*, 431 U.S. 720 (No. 76-404). All of this is why, for half a century, antitrust law has referred to the privity requirement as the "*Illinois Brick* rule," an interpretation the Supreme Court continues to adopt to this day. *Apple Inc. v. Pepper*, 587 U.S. 273, 285 (2019).[2] Cummins' textual argument falters on these facts.

Cummins' second claim is that, even if Congress cannot be assumed to have silently adopted a privity requirement, RICO case law and policy mandate that any developments in antitrust law be incorporated *pari passu* into RICO. This is

---

[2] *See also* Note, *Antitrust Federalism, Preemption, and Judge-Made Law*, 133 Harv. L. Rev. 2557, 2563 (2020) (discussing "*Illinois Brick*" repealer statutes).

wrong, too. The statutes have different aims and address different harms, and the Supreme Court has consistently refused to apply "atextual hurdles" developed in "modern antitrust precedent" to RICO. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985).

Nothing in Cummins' authority, including *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258 (1992), holds otherwise. *Holmes* adopted the proximate cause test from the Clayton Act because—unlike the *Illinois Brick* privity rule—it was a well-established "old soil" principle when RICO was enacted in 1970. Cummins' cases do not mention antitrust standing and did not prevent the Court from reading RICO expansively to protect the ability of injured auction bidders to sue price manipulators with whom they had no contractual relationship at all. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008). Nor did they prevent a suit predicated on personal injury under RICO, a claim without any contractual foundation whatsoever. *Horn*, 604 U.S. at 601. Nor did they alter the Court's earlier refusal to import antitrust damages models as limitations on RICO claims. *Sedima*, 473 U.S. at 495.

As these cases make clear, whether characterized as an issue of statutory standing or proximate cause, the only requirement for plaintiffs to sue under RICO is a direct relationship between the misconduct and the injury, not a direct relationship between the parties. This "flexible" analysis simply cannot be

condensed to a "black-letter rule" like a privity requirement "that will dictate the result in every case." *Bridge*, 553 U.S. at 654.

This case is a perfect illustration of why the distinction matters. The bulk of Plaintiffs' alleged injuries come from increased ownership costs associated with Cummins' post-sale emissions recall and in no way passed through any intermediary, including the dealers. ER-39-41, 67 ¶ 242b; Opening Br. at 23-24. These are non-derivative harms—foreign to antitrust but common to RICO—and under Cummins' rule, no plaintiff would have standing to vindicate them. This would hardly promote the efficient enforcement of RICO, and it is not the law.

Even if the privity requirement were applicable to RICO in some circumstances, Cummins itself concedes it can be "relevant" only for "derivative or passed-on injuries." Answering Br. at 9, 22. Since most of Plaintiffs' injuries are neither, this concession alone requires reversing the ruling below.

## ARGUMENT

### I. The *Illinois Brick* rule is based on *Illinois Brick*, not *Hanover Shoe*.

RICO provides a cause of action to "any person injured in his business or property by reason of" a RICO violation. 18 U.S.C. § 1964(c). This intentionally expansive provision "suggest[s] a breadth of coverage not easily reconciled with" extra-textual standing limitations. *Bridge*, 553 U.S. at 649. "Any person" means any person, and a RICO plaintiff "has been 'injured in his business or property' if

his business or property has been harmed or damaged." *Horn*, 604 U.S. at 601. "Section 1964(c) requires nothing more." *Id.* If RICO has a privity requirement, it does not come from the plain meaning of the statute's text.

Instead, Cummins' argument—adopted by the District Court—rests on Congress's understanding of antitrust law at the time of RICO's codification. Answering Br. at 12; ER-253. As a general matter, "where Congress borrows terms of art" that have "accumulated . . . meaning" over "centuries of practice," "it presumably knows and adopts the cluster of ideas that were attached" to the term of art "unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952). This is the "old soil principle." *Kousisis v. United States*, 605 U.S. 114, 124 (2025) ("When Congress uses a term with origins in the common law, [courts] generally presume that the term 'brings the old soil with it.'"). But it has its limits. Meanings that were "widely accepted," "well-established," and "settled" at "the time of RICO's enactment" are fair game. *Bridge*, 553 U.S. at 651-52. "In the absence of a well-settled rule," however, "the old-soil principle does not apply." *Kousisis*, 605 U.S. at 129.

That is undoubtedly the case here. The Supreme Court would not decide *Illinois Brick*—the case that established the antitrust privity requirement—until 1977, seven years after RICO's enactment. To state the obvious, the old soil doctrine cannot apply to a principle that has not been announced.

Acknowledging this, Cummins is forced to argue (Answer Br. at 16), as the District Court held (ER-253), that the antitrust privity requirement in fact originated in a 1968 Supreme Court decision, *Hanover Shoe*, 392 U.S. 48. But there is a reason why the Supreme Court, this Court, the District Court, and Cummins (at least in the court below) consistently call the antitrust privity doctrine the "*Illinois Brick*" rule. *See, e.g.*, ER-125, 250, 253; *Apple Inc.*, 587 U.S. at 276[3]; *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002). *Hanover Shoe* holds that "when a buyer shows that the price paid by him for materials purchased for use in his business is illegally high . . ., he has made out a prima facie case of injury and damage within the meaning of § 4 [of the Clayton Act]." 392 U.S. at 489. With this in mind, the Court rejected a "passing-on defense" that would allow a defendant to introduce evidence that an injured plaintiff recovered the alleged overcharge from the next purchaser in the commercial chain. *Id.* at 493. While *Hanover Shoe* may have been "grounded in [similar] concerns" as *Illinois Brick*, ER-253, it fell far short of announcing a categorical privity rule for affirmative claims.[4]

---

[3] Notably, in *Apple Inc.* the majority and dissent cite *Illinois Brick* eighty-four times for the proposition that direct purchasers have exclusive antitrust standing. By contrast, *Hanover Shoe* merits only one *cf.* cite from the majority and is invoked by the defense only for the proposition that a defendant could not use a "pass-on" theory as a shield to liability.

[4] No more persuasive is Cummins' invocation of *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.*, a case that involved rates approved by the Interstate Rate

Not surprisingly, in the time between *Hanover Shoe* and *Illinois Brick*, most courts did not limit standing to direct purchasers, including this Court. In *Liquid Asphalt*, this Court explained that it had long "refused to defeat a cause of action for antitrust violations, merely because the violator chose to deal through intermediaries." 487 F.2d at 199. Put simply, "[p]rivity is not required in antitrust cases." *Id.* at 197. According to this Court's interpretation, moreover, the "policy not to defeat recovery merely because a defendant has sold through intermediaries" was "reflected" in, not undermined by, "*Hanover Shoe*, where without the ultimate consumer at bar, the intermediary was allowed to recover." *Id.* at 199-200.

Many other judges agreed. As one court put it, "it would be stretching *Hanover Shoe* beyond all recognition to hold that its rejection of the passing-on defense somehow returns § 4 of the Clayton Act to the 'days when 'privity' was king.'" *Boshes v. Gen. Motors Corp.*, 59 F.R.D. 589, 596 (N.D. Ill. 1973). Another found "[t]he attempt to transform a rejection of a defense because it unduly hampers antitrust enforcement into a reason for a complete refusal to entertain the claims of a certain class of plaintiffs" to be "an ingenious"—and misguided—

Commission and did not involve the Clayton Act or antitrust standing. 245 U.S. 531 (1918). The Court affirmed judgment for the direct purchaser over an argument that recovery was precluded because it passed on the overcharge. *Id.* at 534. This was simply another rejection of the pass-on defense and had nothing to do with affirmative standing. In any event, *Horn* presciently warned against importing antitrust limitations into RICO based "on a single sentence from a century-old case about rate fixing." *Horn*, 604 U.S. at 607 n.7.

"attempt to turn [*Hanover Shoe*] and its underlying rationale on its head." *In re Master Key Antitrust Litig.*, 1973 WL 855, at *2 (D. Conn. Aug. 23, 1973). Yet another held "it would disserve the policies stated by the Court [in *Hanover Shoe*] to permit these defendants to use the Court's very prohibition of the use of the passing-on defense as a complete defense against an entire class of plaintiffs." *Carnivale Bag Co. v. Slide-Rite Mfg. Corp.*, 395 F. Supp. 287, 290 (S.D.N.Y. 1975). And in the opinion ultimately reversed in *Illinois Brick*, the Seventh Circuit joined the chorus rejecting the argument that "*Hanover Shoe* precludes [remote] purchasers from ever recovering." *Illinois. v. Ampress Brick Co.*, 536 F.2d 1163, 1166 (7th Cir. 1976), *rev'd sub nom. Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). At bottom, as summarized by this Court, in the decades preceding *Illinois Brick*, "[p]rivity [was] not required in antitrust cases." *Liquid Asphalt*, 487 F.2d at 197.

Ultimately, of course, the Supreme Court went the other way. But the point is that in the wake of *Hanover Shoe*, there was, at best, "a conflict among the circuits on the issue of whether indirect purchasers can sue and recover for illegal overcharges," as confirmed by the petition for writ of certiorari that the Court granted in *Illinois Brick*. Petition for Writ of Certiorari at 8, *Illinois Brick* (No. 76-404).

This conflict lays waste to Cummins' argument that the antitrust privity rule was "well-established," "widely accepted," or "settled" at the time RICO was enacted. And, lest there be any doubt about what was (or was not) on Congress' mind, the words "*Hanover Shoe*," "privity," and "pass-through" are entirely absent from RICO's legislative history.[5] Against this backdrop, there is simply no reason believe that, in modeling some of RICO on the Clayton Act, Congress must "have meant to incorporate the antitrust law's indirect purchaser rule." Answering Br. at 12.

None of Cummins' authority about the relationship between RICO and the Clayton Act suggests otherwise. Answering Br. at 13-14 (citing *Holmes*, 503 U.S. 258; *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997); *Rotella v. Wood*, 528 U.S. 549 (2000)). In each case, the Clayton Act rule being applied to RICO was already established at the time of RICO's enactment, unlike the *Illinois Brick* rule.

*Holmes* is the perfect example. There, the Court held that the term "by reason of" in § 1964 incorporates common law proximate cause principles that were *well-settled* at the time of RICO's enactment. *See* 503 U.S. at 267-68. Proximate causation had deep common law roots and had been applied to antitrust

---

[5] None of the identified terms appears anywhere in the RICO legislative history compilations available in either Westlaw or HeinOnline.

cases for decades before RICO's enactment. *E.g.*, *Loeb v. Eastern Kodak Co.*, 183 F. 704, 709 (3d Cir. 1910); *Ames v. Am. Tel. & Tel. C*o., 166 F. 820 (C.C.D. Mass. 1909); *Westmoreland Asbestos Co. v. Johns-Manville Corp.*, 30 F. Supp. 389 (S.D.N.Y. 1939), *aff'd mem.*, 113 F.2d 114 (2d Cir. 1940). Indeed, by the 1950s, courts viewed proximate cause as the "*sine qua non* of antitrust standing." Daniel Berger & Roger Bernstein, *An Analytical Framework for Antitrust Standing*, 86 Yale L.J. 809, 818 (1977) (citing cases). The same is true of *Malley-Duff*, *Klehr*, and *Rotella*, all of which applied Clayton Act statute of limitations rules that—unlike the *Illinois Brick* rule—were "*well-established* by the time civil RICO was enacted." *Rotella*, 528 U.S. at 557 (citing *Klehr*, 521 U.S. at 189) (emphasis added).

When RICO was enacted, the antitrust privity rule did not exist. The District Court therefore erred in concluding that, because of their shared text, "RICO and the Clayton Act must be interpreted the same." ER-200.

## II. Nothing compels that RICO and antitrust law should move in tandem.

Remarkably, in an argument based on a statute that grants legal protection to "any person," Cummins insists that "the analysis both begins and ends with text." Answering Br. at 8. Were the original, well-established meaning of RICO's text as Cummins claims, perhaps this argument could claim some plausibility. But as discussed above, no privity requirement was contemplated by the Congress of

1970. Cummins next relies on a weak policy justification to posit that "[t]he incorporation of the antitrust laws' indirect purchaser rule into RICO makes good sense." Answering Br. at 19. This fails too.

### A. RICO and antitrust law address different harms.

Without the aid of any well-established standing rules in antitrust cases prior to *Illinois Brick,* Cummins falls back on a general "presump[tion]" that "the same language in related statutes carries a consistent meaning." Answering Br. at 12. But that presumption carries little weight for interpretations explained more by policy considerations than a literal application of the shared text. That is precisely the case here.

As many courts and commentators have observed, *Illinois Brick*'s interpretation of the Clayton Act was not "justified on textualist [] grounds." Daniel A. Crane, *Antitrust Antitextualism*, 96 Notre Dame L. Rev. 1205, 1227 (2021). "[O]ther than repeating the statutory boilerplate," the decision "[did not] dwel[l] on" the textual "question of who is injured," focusing instead on the practical "problem of computing passed-on damages." Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 346 (2025). The Supreme Court recently endorsed this interpretation, noting that the animating "rationale" of *Illinois Brick* was "to ensure an effective and efficient litigation scheme in antitrust cases," and the "bright-line

rule is grounded" not on a strict textual analysis but "on the 'belief that simplified administration improves antitrust enforcement.'" *Apple Inc.*, 587 U.S. at 282 (quoting Areeda & Hovenkamp, ¶ 346e).[6]

What makes sense for antitrust administration, however, does not always make sense for RICO. Notwithstanding the textual overlap between the civil enforcement provisions of RICO and the Clayton Act, the statutes are designed to address different injuries and are governed by different considerations. As relevant here, the Clayton Act's relatively narrow focus on restraint of trade means that violations will almost always manifest in an overpayment injury to the immediate purchaser, conferring standing and incentive to sue. Thus, in this limited context, a rigid privity rule avoids duplicative damages and promotes enforcement without foreclosing entire categories of legitimate injuries to business or property.

By contrast the "notoriously expansive" RICO statute addresses dozens of categories of violations and a wide-ranging spectrum of harms. *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023); *see also Holmes*, 503 U.S. at 272 n.20. Many of

---

[6] *See also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 313 (3d Cir. 2011) ("*Illinois Brick*'s restriction on indirect purchaser recovery was motivated by prudential concerns for manageability[.]"); *Freedom from Religion Found., Inc. v. Chao*, 433 F.3d 989, 991 (7th Cir. 2006) ("An example of the prudential limitations on standing is the judge-made 'indirect purchaser' doctrine of antitrust law," which is premised on minimizing complicated litigation), *rev'd on other grounds*, *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587 (2007); *In re Mid-Atl. Toyota Antitrust Litig.*, 516 F. Supp. 1287, 1291 (D. Md. 1981) ("[T]he *Illinois Brick* opinion was grounded on policy considerations.").

those harms do not pass through intermediaries, even in the subset of RICO cases involving purchase transactions.[7]

In this case, for example, Plaintiffs suffered injury not just because they overpaid for over-polluting trucks at the dealerships, but also because their trucks were subjected to an inevitable emissions recall that diminished the trucks' fluid economy and increased the cost of operating them. ER-39-41, 67 ¶ 242b; Opening Br. at 12, 23-24. These non-derivative injuries—the centerpiece of Plaintiffs' ongoing discovery efforts for the remaining state law claims that are not part of this appeal—manifested well after the trucks left the dealerships and in no way "passed through" them. As Cummins acknowledges, a purchaser privity rule can be "relevant" only for "derivative or passed-on injuries." Answering Br. at 9, 22. That is correct and an independent reason why a privity requirement is irrelevant for this specific case.

Plaintiffs' unique injury is also an illustration of why, as a general matter, RICO is not amenable to bright-line standing rules, and why—as reviewed

[7] It is true that not every Clayton Act case involves a purchaser. Answering Br. at 22. But these cases are easily dealt with under limited exceptions to *Illinois Brick*. In contrast, if a privity requirement were applied to RICO, the statute's expansive scope would require an avalanche of exceptions that would swallow the rule. This is why, for RICO, the Supreme Court repeatedly rejects bright-line rules in favor of flexible tests like proximate cause.

below—the Supreme Court consistently rejects rigid limiting principles from bodies of law like antitrust.

### B. The Supreme Court has not imported antitrust limitations into RICO.

Cummins says little about RICO but a lot about antitrust, as did the District Court. However, the Supreme Court has not engaged in the wholesale importation of statutory limitations from antitrust to RICO.

In *Sedima*, for example, the Court rejected a "racketeering injury" requirement analogous to the Clayton Act's "antitrust injury" requirement. 473 U.S. 495. The Court found "no room in [RICO's] statutory language for an additional, amorphous . . . standing requirement," *id.* at 495, 500, particularly given Congress's "express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes,'" *id.* at 498. Just this year, the Court reaffirmed this principle, again rejecting the analogy to "antirust precedent" and reiterating that RICO's "remedial provision" has no room for "atextual hurdles" developed in "modern antitrust precedent." *Horn*, 604 U.S. at 595, 607-08, 614. Despite the similarities in their enforcement schemes, the Court explained, the "Clayton Act and [RICO] are not 'interchangeable.'" *Id.* at 608.

Cummins argues, and the District Court agreed, these cases are uninformative because they purportedly address statutory provisions inapplicable here. Answering Br. 28-29; ER-200-01, 251-53. That is not correct. Both *Horn* and

*Sedima* turned on the proper interpretation of the statutes' common clause, "[any] person injured in his business or property." *Sedima*, 473 U.S. at 496-97; *Horn*, 604 U.S. at 600-01. This is precisely the shared language that Cummins invokes as the textual root of the antitrust privity requirement (Answering Br. at 7, 14), and, in defining it for RICO, the Court rejected interpretations that same language had spawned in antitrust law.

The Court articulated similar principles even more sweepingly in *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). It is true that "*Bridge* did not involve any analogy to antitrust law," but that does not make the case "uninformative" here. Answering Br. at 29. To the contrary, *Bridge* provides another clear example of the Court refusing to read into RICO's broad statutory provisions atextual limitations from other bodies of law—this time the common law of fraud. Again, the Court "refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe." 553 U.S. at 660.

Together, these cases—and the many others discussed in Plaintiffs' Opening Brief (at 15-18)—send a strong message: RICO is a broad statute that cannot be handcuffed by policy considerations developed in other bodies of law, particularly antitrust. The Supreme Court's interpretation of RICO, not the Clayton Act, is controlling.

### C. The only direct-relation test for RICO is proximate cause.

RICO requires only a direct relationship "between the injury asserted and the injurious conduct," *Horn*, 145 S. Ct. at 945—not a contractual relationship between the parties. This is the proximate cause test, and, as the Supreme Court has held repeatedly, it is a "flexible" analysis that cannot be reduced to a "black-letter rule"—like Cummins' privity requirement—"that will dictate the result in every case." *Bridge*, 553 U.S. at 654; *see also Yegiazaryan*, 599 U.S. at 545 ("While a bright-line rule would no doubt be easier to apply, fealty to [RICO's] focus requires a more nuanced approach.").

Unable to distinguish this precedent, Cummins argues it is simply irrelevant. In Cummins' view, privity and proximate cause are two different directness tests, to be applied at different stages: the privity rule is a threshold question of statutory standing "typically resolved at the pleadings" whereas proximate cause is better suited for later stages. Answering Br. at 25-27. Because RICO claims are "the litigation equivalent of a thermonuclear device," Cummins argues, a standalone privity requirement is the only way to "flush out frivolous RICO allegations at an early stage of litigation." Answering Br. at 27.

This argument ignores the fact that, following Supreme Court precedent, this Circuit has confirmed that the only direct-relation test necessary to satisfy "the statutory standing requirements particular to RICO" is proximate cause. *Mendoza*,

301 F.3d at 1168. In any case, RICO proximate cause *is* an effective, early-stage screen for remote injuries, as confirmed by the fact that many of the seminal cases on RICO proximate cause—*e.g.*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461-62 (2006); *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 983 (9th Cir. 2008)—all resulted in dismissals at the pleading stage. Regardless, "concerns about a fact-intensive test cannot displace congressional policy choices, where a more nuanced test is true to the statute's meaning." *Yegiazaryan*, 599 U.S. at 548.

**D. There is no "judicial consensus" on RICO standing restrictions.**

Whether RICO should require privity is an issue of first impression before this Court. Cummins relies on a handful of Circuit cases that predate the Supreme Court's expansive interpretations of RICO in cases such as *Bridge* and *Horn.* Those cases were addressed in Plaintiffs' Opening Brief and need not be repeated here. By contrast, Plaintiffs cite multiple more recent cases (Opening Br. at 24-25), that Cummins either ignores or mischaracterizes.

The only clear doctrinal certainty is the falsehood of Cummins' suggestion that there is "consensus among other courts on applying the indirect purchaser rule to RICO." Answering Br. at 31. As the Fourth Circuit put it recently, the application of the indirect purchaser rule to RICO is a "complicated question on which courts have taken diverging views." *MSP Recovery Claims, Series LLC v.*

*Lundbeck LLC*, 130 F.4th 91, 110 n.11 (4th Cir. 2025). This is hardly the "overwhelming[] . . . weight of authority" that Cummins purports to invoke. Answering Br. at 34.

Ultimately, the statutory language of "any person" should be read to mean what it says: any person injured by conduct covered under RICO. Courts "are not at liberty to rewrite RICO" to add an extra-textual standing limitation like the purchaser privity rule found nowhere in the statute's text or legislative history. *Bridge*, 553 U.S. at 660.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court below.

Dated: November 24, 2025

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Kevin Budner*

Elizabeth J. Cabraser (SBN 083151)
Kevin R. Budner (SBN 287271)
Phong-Chau G. Nguyen (SBN 286789)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008
ecabraser@lchb.com
kbudner@lchb.com
pgnguyen@lchb.com

David S. Stellings
Miranda K. Litwak
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
dstellings@lchb.com
mlitwak@lchb.com

Roland Tellis (SBN 186269)
David B. Fernandes, Jr. (SBN 280944)
Adam M. Tamburelli (SBN 301902)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: 818-839-2333
rtellis@baronbudd.com
dfernandes@baronbudd.com
atamburelli@baronbudd.com

Steve W. Berman
Garth D. Wojtanowicz
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
garthw@hbsslaw.com

James E. Cecchi
CARELLA, BYRNE, CECCHI, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Telephone: (212) 584-0700
cseeger@seegerweiss.com
cayers@seegerweiss.com

Joseph F. Rice
Ann K. Ritter
Lance V. Oliver
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000
Fax: (843) 216-9450
jrice@motleyrice.com
aritter@motleyrice.com
loliver@motleyrice.com

Rosemary M. Rivas (SBN 209147)
Amy M. Zeman (SBN 273100)
Rosanne L. Mah (SBN 242628)
GIBBS MURA LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
amz@classlawgroup.com
rlm@classlawgroup.com

*Attorneys for Plaintiffs-Appellants*

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
(212) 998-6580
Si13@nyu.edu

*On the Brief*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-3854

I am the attorney or self-represented party.

**This brief contains** 4,630 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- [x] complies with the word limit of Cir. R. 32-1.
- [ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- [ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- [ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- [ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- [ ] complies with the length limit designated by court order dated ______.
- [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /Kevin R. Budner **Date** 11/24/2025

*(use "*s/[typed name]*" to sign electronically-filed documents)*